United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 21-7107                                         September Term, 2021
                                                    FILED ON: JULY 12, 2022

DAVID NAKHID,
            APPELLANT

v.

AMERICAN UNIVERSITY,
            APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-03268)

Before: ROGERS, MILLETT and KATSAS, *Circuit Judges*

**JUDGMENT**

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the following reasons, it is

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

David Nakhid, a former professional soccer player and coach, sued American University for employment discrimination on the basis of race, ethnicity, or national origin based on its decision not to hire him to coach the men's soccer team. The district court granted summary judgment for the University, ruling that Title VII and § 1981 do not protect a noncitizen candidate who submits a job application while not physically present in the United States, and that, alternatively, Nakhid had failed as a matter of law to establish that the University's stated race-neutral reason for declining to hire him was a pretext for discrimination. *Nakhid v. Am. Univ.*, No. 19-cv-3268, 2021 WL 4169355 (D.D.C. Sept. 14, 2021). On the alternative ground, the court affirms.

In hiring a new head coach for its Division 1 men's soccer team, American University sought candidates with "5–8 years of relevant experience," including "[d]emonstrated knowledge and success in coaching at the collegiate or professional level," as well as the "[a]bility to work successfully with male college student-athletes" and to navigate applicable collegiate league

2

regulations. Job Posting. Nearly 100 candidates applied. The University conducted screening interviews with eight candidates, follow-up Skype interviews with five candidates, and final in-person interviews with two of those candidates. It hired a candidate with about twenty years of collegiate coaching experience at three universities. Nakhid was not selected for an initial screening interview.

Under both Title VII and § 1981, courts analyze claims of discrimination under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See DeJesus v. WP Co. LLC*, 841 F.3d 527, 532 (D.C. Cir. 2016). When an employer sued for discrimination asserts a "legitimate, nondiscriminatory reason" for its decision, the plaintiff bears the burden of showing that the employer's proffered reason was "pretext." *McDonnell Douglas*, 411 U.S. at 802, 804. The question then becomes whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason" for the adverse action. *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494–95 (D.C. Cir. 2008).

Here, because the University articulated a legitimate, nondiscriminatory reason for declining to hire (or even to interview) Nakhid — his lack of collegiate coaching experience — Nakhid must show there was sufficient evidence for a reasonable jury to conclude that this explanation was a pretext for discrimination on the basis of race, ethnicity, or national origin. Nakhid cannot do so. He offers three reasons a jury might find the University's explanation pretextual; none is persuasive.

First, Nakhid suggests that the University's asserted reason for declining to hire him must be pretextual because the job posting indicated that "collegiate or professional" coaching experience would fit the bill, and he had the latter. Job Posting. But the job posting also emphasized collegiate-sports-specific experience, like the "ability to work within NCAA and Patriot League regulations" and the "[a]bility to work successfully with male college student-athletes." *Id.* The question is not whether collegiate experience was in fact required but rather whether hiring officials sincerely made their decision on that basis and not on the basis of race. *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). All of the University personnel who were involved in the hiring process attested to the central role that collegiate coaching experience played in their decisionmaking process. The resumes of their preferred candidates bear out that assertion: All the candidates interviewed, including the successful candidate, had collegiate coaching experience. Nakhid's assertion that the University official in charge of hiring admitted he was qualified for the position is unsupported by the record.

For much the same reason, Nakhid's contention that he was more qualified than the candidate selected is misplaced and circular. Nakhid's testimony as to the "night and day" difference between U.S. college soccer and European professional football, Nakhid Dep. Tr. at 37 (Nov. 16, 2020), reveals the illogic of his insistence that professional coaching experience is more prestigious, and thus more relevant, than collegiate coaching experience. The selected candidate, Zach Samol, had extensive collegiate coaching experience; Nakhid had none. The question is not

3

whether he was objectively qualified, but rather whether hiring officials genuinely rejected his application for lack of collegiate experience. *Fischbach*, 86 F.3d at 1183.

Second, Nakhid suggests that the University's failure to follow its affirmative action policies is indicative of pretext. But Nakhid is unable to point to any substantive violation of the University's affirmative action policy; instead, he maintains that staff failed to submit an administrative "search closure form" that would have certified, among other things, that the hiring process complied with applicable affirmative action policies. That bureaucratic oversight could not cast doubt in the mind of any reasonable juror on the University's facially plausible stated reason for not hiring Nakhid, especially given that the staffer in charge of the hiring process relied on the guidance provided by the human resources department. Other supposed irregularities, like the hiring officer's acceptance of some applications by email and others on the web portal, do not appear to fall under the umbrella of affirmative action policies at all.

Third, Nakhid suggests the University's treatment of another Black applicant, Clint Peay, supports an inference that the hiring process was discriminatory. But unlike Nakhid, Peay had both collegiate and professional coaching experience and was selected for an interview, as was another Black candidate with collegiate experience who advanced to the second round of interviews. The University's rejection of a different candidate *with* collegiate experience does not shed light on whether Nakhid was rejected for *lack* of collegiate experience. *See Fischbach*, 86 F.3d at 1183. Nakhid observes that the executive leadership of the University's athletic department consisted of only white employees during the relevant time period. Under these circumstances, however, a lack of existing diversity, without more, cannot demonstrate that the University's explanation is pretextual.

Because Nakhid failed to produce sufficient evidence for a reasonable jury to find that the University's explanation for declining to hire him is pretextual, the court need not consider whether Title VII or § 1981 apply to job candidates who are not U.S. citizens and who apply to U.S.-based jobs while physically located outside the United States.

Finally, Nakhid challenges the district court's denial of his motion to compel the University to produce other complaints of discrimination filed against the athletic department and data about purported racial disparities among its staff. Nakhid has not demonstrated that the district court abused its discretion in ruling that the University had met its discovery obligations by searching for such information, which the University reported did not exist.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

4

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk